UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATINA M. PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:14-CV-1004-SPM |
| | ) |
| TRIDENT ASSET MANAGEMENT, L.L.C., | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This case is before the Court on the Partial Motion for Summary Judgment filed by Plaintiff Katina M. Perry ("Plaintiff") (Doc. 15) and the Motion for Summary Judgment filed by Defendant Trident Asset Management, L.L.C. ("Defendant") (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 7). For the reasons stated below, Plaintiff's motion will be denied, and Defendant's motion will be granted.

I. **FACTUAL BACKGROUND**[1]

In May 2008, Plaintiff wrote a personal check to a casino, and it was dishonored. In 2011, Defendant (a debt collector) began reporting Plaintiff's 2008 debt to one or more credit agencies. However, Defendant did not place any telephone calls or send any direct communications to Ms. Perry concerning the debt. In September 2013, Plaintiff reviewed her credit report and noticed for the first time that Defendant had made a negative entry on her credit report regarding a debt to a casino that had been opened in May 2008 and last reported on August 23, 2013. On

---

[1] These facts are taken from the parties' statements of uncontroverted facts and responses thereto. (Docs. 16, 19-1, 26).

1

October 1, 2013, Plaintiff called Defendant and told Defendant that she had noticed the debt on her credit report. Defendant told her the amount of the debt, $225, and told her that that number included a $25 fee. They then had the following exchange:

> PLAINTIFF: Is there a deadline when I have to have this paid by?
>
> DEFENDANT: No ma'am, you can just begin making monthly payments to it. You can do that at our website or by send[ing] us a money order.

Plaintiff asked if Defendant had called her or sent her anything about this, and Defendant said it had not. Plaintiff requested something in writing and provided her current mailing address, and Defendant stated that it would send a statement in the mail. During the call, Defendant did not disclose to Plaintiff that she retained the right to dispute the debt.

On October 2, 2013, Defendant mailed a letter to Plaintiff containing the disclosures articulated in 15 U.S.C. § 1692g (including her right to dispute the debt within 30 days of receiving the letter). Plaintiff never received the letter.

Plaintiff filed suit in state court, alleging that Defendant's conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Defendant removed the action to this Court.

**II.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

The standards applicable to summary judgment motions are well settled, and they do not change when both parties have moved for summary judgment. *Tower Rock Stone Co. v. Quarry & Allied Workers Local No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hill v. Walker*, 737 F.3d 1209,

1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.

### III. DISCUSSION

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' . . . and debt collectors are liable for failure to comply with 'any provision' of the Act." *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir. 2006) (quoting 15 U.S.C. §§ 1692(a) and 1692k(a)). In order to establish an FDCPA violation, "Plaintiff must prove that she is a consumer; Defendant is a debt collector; there was an attempt to collect a debt; and Defendant violated, by act or omission, a provision of the FDCPA." *Campbell v. Credit Protection Ass'n*,

3

No. 4:12CV00289AGF, 2013 WL 1282348, at *4 (E.D. Mo. Mar. 27, 2013) (citing *Pace v. Portfolio Recovery Assocs.*, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012)). It is undisputed that Plaintiff is a consumer, that Defendant is a debt collector, and that there was an attempt to collect a debt. The only issue is whether Defendant violated a provision of the FDCPA.

Plaintiff argues that she is entitled to summary judgment on the question of liability because the undisputed facts show that Defendant violated two FDCPA provisions: § 1692g(a) and § 1692g(b). Defendant argues that it is entitled to summary judgment because the undisputed facts show that it did not violate either provision.

### a. Plaintiff's § 1692g(a) Claim: Failure to Send Notice of Dispute Rights Within Five Days of Initial Communication

Plaintiff first argues that Defendant violated § 1692g(a) by failing to send her notice of her dispute rights (a "validation notice") within five days of reporting her debt to a credit reporting agency. Section 1692g(a) provides, in relevant part, as follows:

> Within five days after the **initial communication with a consumer** in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)    the amount of the debt;
>
> (2)    the name of the creditor to whom the debt is owed;
>
> (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)    a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added). Plaintiff asserts that the "initial communication with a consumer" occurred when Defendant first reported Plaintiff's debt to the credit reporting agencies in 2011. Plaintiff argues that because the five-day notice requirement was triggered in 2011, Defendant violated § 1692g(a) by failing to send Plaintiff the validation notice until October 2, 2013. Defendant, on the other hand, argues that reporting a debt to a credit reporting agency does not constitute an "initial communication with a consumer." Defendant contends that the initial communication occurred when Plaintiff called Defendant on October 1, 2013, such that Defendant satisfied the requirements of § 1692g(a) by sending the required validation notice on October 2, 2013.

The language of the FDCPA and current case law both support Defendant's position that a report to a credit reporting agency is not a "communication with a consumer." Under the FDCPA, the term "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The term "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The credit reporting agencies are clearly not "consumers" as that term is defined in the statute, because they are business entities rather than natural persons and because they are not obligated to pay the debt at issue. Plaintiff suggests that by conveying information to the credit reporting agency, Defendant *indirectly* conveyed it to Plaintiff, and therefore Defendant made a "communication with a consumer." However, that stretches the meaning of "communication with a consumer" too far. Defendant conveyed information regarding a debt to a third party, and there is nothing to suggest that it directed the third party to convey that

information to Plaintiff. Indeed, Plaintiff did not even learn about the information until approximately two years after Defendant originally reported it. Plaintiff's argument, if accepted, would essentially read "with a consumer" out of the statutory language and would require a debt collector to send a validation notice within five days of making *any* communication regarding a debt, if there is some chance that the consumer might eventually learn about the communication.

Other courts within the Eighth Circuit and elsewhere have also rejected the argument that reporting a debt to a credit reporting agency is an "initial communication with a consumer" for purposes of § 1692g(a). In *Edeh v. Aragon Collection Agency, LLC*, for example, the court dismissed a claim that a debt collector had violated § 1692g(a) by failing to send notices after reporting a debt to a credit reporting agencies. Civ. No. 10–4475 (JNE/JJK), 2011 WL 2963855, at *4 (D. Minn. June 20, 2011), *Report and Recommendation adopted*, 2011 WL 2910750 (D. Minn. July 20, 2011). It stated:

> Here, Plaintiff alleges that Defendant reported the debt to the credit reporting agencies and that this constituted an "initial communication" under the statute. But . . . the credit reporting agencies are not "natural person[s]." 15 U.S.C. § 1692g(a)(3). Nor are they obligors or alleged obligors of the debt. Thus, the reporting companies are not "consumers" under the FDCPA, and Aargon's reporting of the debt to these agencies did not trigger any notification obligations under § 1692g(a).

*Id. See also Toth v. Cavalry Portfolio Servs., LLC*, No. 2:13-cv-1397, 2013 WL 5658168, at *2 (D. Nev. Oct. 16, 2013) (rejecting the plaintiff's argument that reporting a debt to a credit reporting agency constituted an "initial communication with a consumer" under 15 U.S.C. § 1692g(a); noting that such a reading would be "staggeringly broad" and "would impose notification requirements any time a creditor made any communication regarding any past due account, in case such information eventually made its way to the debtor"); *Robinson v. TSYS Total Debt Mgmt.*, Inc., 447 F. Supp. 2d 502, 508-09 (D. Md. 2006) (holding that communication

of a debt to the plaintiff's credit reporting agency was not an "initial communication" under § 1692g "because it is not a communication with a consumer").

Plaintiff emphasizes that several courts have held that a report to a credit agency is a "communication" or is "collection activity" that may give rise to liability under the FDCPA. *See, e.g.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004) (holding that a report to a credit reporting agency was a "communication" that "would be covered by FDCPA § 1692e if the communication is false, deceptive, or misleading"); *Sullivan v. Equifax*, No. CIV.A. 01-4336, 2002 WL 799856, at *4 (E.D. Pa. April 9, 2002) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA."); *Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1035-36 (holding that reporting a debt to a credit reporting agency constitutes debt collection activity within the meaning of the FDCPA). However, the crux of the dispute here is not whether reporting debt is a "communication" or "debt collection activity," but rather whether it is a "communication *with a consumer*" that triggers § 1692g(a)'s validation notice requirements. Plaintiff cites no cases finding that reporting to a credit agency is a communication with a consumer, and the Court has found none.

For the above reasons, the Court finds that the credit reporting of Plaintiff's debt was not an "initial communication with a consumer." Instead, the initial communication with a consumer occurred on October 1, 2013, when Plaintiff called Defendant and Defendant explained the terms of the debt to Plaintiff. Thus, under § 1692g(a), Plaintiff had five days from October 1, 2013, to

send the validation notice. It is undisputed that Defendant sent a validation notice on October 2, 2013, thereby satisfying its obligations under § 1692g(a).[2]

For all of the above reasons, the undisputed facts show that Defendant did not violate § 1692g(a). Defendant is therefore entitled to summary judgment on Plaintiff's § 1692g(a) claim.

### b. Plaintiff's § 1692g(b) Claims: Overshadowing

Plaintiff's second claim is that Defendant violated § 1692g(b) by engaging in conduct that "overshadowed" her right to dispute the debt at issue. As discussed above, § 1692g(a) requires a debt collector to send, within five days of the initial communication with a consumer, a validation notice informing her of, *inter alia*, her right to dispute the debt and to request the name of and address of the original creditor within 30 days of receipt of the validation notice. Section 1692g(b) provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ." § 1692g(b). "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original

---

[2] It is not relevant that Plaintiff did not *receive* the notice, because § 1692g(a) requires only that the debt collector *send* the notice. *See May v. NCEP, LLC*, No. 4:13CV1583 CDP, 2014 WL 2009081, at *4 (E.D. Mo. May 16, 2014) (finding it irrelevant for purposes of a claim of violation of § 1692g(a) that the plaintiff had not received the letter, because "[t]he FDCPA only requires that the debt collector send the notice, not that it establish receipt of the notice by the debtor"); *Moore v. CCB Credit Servs., Inc.,* No. 4:11CV2132 RWS, 2013 WL 211048, *2-*3 (E.D. Mo. Jan. 18, 2013) (granting summary judgment on § 1692g(a) claim where debt validation notice was sent, even though debtor claimed it was never received).

8

creditor." *Id.* However "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ." *Id.* "'Overshadowing or inconsistency occurs when a debt-collection letter conveys information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'" *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14CV816 RWS, 2014 WL 6607197, at *3 (E.D. Mo. Nov. 19, 2014) (quoting *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1064 (D. Minn. 2008)).

"Whether collection activities or communications within the 30-day validation period overshadow or are inconsistent with a validation notice is determined under the 'unsophisticated consumer' standard." *Glackin v. LTD Fin. Servs., L.P.*, No. 4:13-CV-00717 (CEJ), 2013 WL 3984520, at *3 (E.D. Mo. Aug. 1, 2013) (quotation marks omitted). A debt collector violates the FDCPA by making a communication that would "mislead or confuse" an unsophisticated consumer. *Id.* An unsophisticated consumer is "uninformed, naïve, and trusting, but still has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id.* "The unsophisticated consumer is an individual with below average intelligence but not 'tied to the very last rung on the sophistication ladder.'" *Id. (*quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000)). The standard "also has an 'objective element of reasonableness,' which 'protects debt collectors from liability for unrealistic or peculiar interpretations.'" *Id.* (quoting *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483-84 (7th Cir. 1997)).

The Eighth Circuit does not appear to have addressed whether the application of the unsophisticated consumer standard to an overshadowing claim presents a question of law or fact. However, both parties treat this as a question of law for the court, and district courts within this

9

circuit have generally held that the issue of overshadowing can be determined as a matter of law where the facts are undisputed. *See, e.g.*, *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14CV816 RWS, 2014 WL 6607197, at *3 (E.D. Mo. Nov. 19, 2014); *O'Connor v. Credit Protection Ass'n, LP*, No. 4:11CV2187SNLJ, 2013 WL 5340927, at *7 (E.D. Mo. Sept. 23, 2013); *Owens v. Hellmuth & Johnson, PLL*C, 550 F. Supp. 2d 1060, 1065 (D. Minn. 2008) (noting split in authority in other circuits and considering overshadowing as a question of law). The Court will follow the same approach here.

Plaintiff asserts that Defendant overshadowed the validation notice in two ways: (1) by demanding payment of the debt during the October 1, 2013 phone call; and (2) by reporting the debt to the credit reporting agency from 2011 to 2013. The Court will consider each in turn.

*(1) Payment Demand During October 1, 2013 Telephone Call*

Plaintiff argues that Defendant overshadowed her dispute rights in violation of § 1692g(b) when it told her in the October 1, 2013 telephone call, "You can just begin making monthly payments to [the debt]. You can do that at our website or by send[ing] us a money order." The Court will assume, without deciding, that statements made during an initial communication with a consumer, but before the sending or receipt of a validation notice, may overshadow the disclosure of rights in the validation notice and thereby violate § 1692g(b).[3]

---

[3] By its terms, § 1692g(b) addresses only "collection activities and communication during the 30-day period." The "30-day period" referred to is the period that begins upon the plaintiff's "receipt" of the validation notice required by § 1692g(a). The October 1 communication at issue here was made and received before the October 2 validation notice was even sent, and thus arguably it does not fall within the terms of the statute. However, at least one court has suggested that the period covered by § 1692g(b) may include overshadowing communications made in the initial communication that triggers the obligation to send the validation notice, even if the validation notice is sent later. *See Bryant v. Wells Fargo Bank*, 861 F. Supp. 2d 646, 651 n.1 & 652 (E.D. N.C. March 1, 2012) (addressing the merits of a claim of overshadowing based on a communication sent five days before the validation notice, but noting uncertainty regarding

10

However, even when that assumption is made, Plaintiff's overshadowing claim fails as a matter of law.

Plaintiff cites several cases in which a demand for payment was found to overshadow an otherwise proper validation notice. Significantly, however, each of those cases involved either a demand for "immediate" payment or a demand for payment by a specific deadline that fell within the 30-day dispute period specified in the validation notice. *See Johnson v. Evans*, No. 4:14-CV-671-NAP, at 8-16 (E.D. Mo. April 8, 2014) (Pl's Ex. 6) (holding that statements that a debt collector "need[ed] to know now if you are interested in paying" and that payment was "due immediately," combined with an implied threat to sue, would have confused an unsophisticated consumer about her right to dispute the debt and therefore overshadowed the plaintiff's dispute rights as explained in a separate validation notice); *Glackin v. LTD Fin. Servs., L.P.*, No. 4:13-CV-717 (CEJ), 2013 WL 3984520, at *2-*3 (E.D. Mo. Aug. 1, 2013) (finding that the defendant's statement that "we want a payment in our office by [March] 29th" overshadowed the plaintiff's dispute rights, because "[f]rom the standpoint of an unsophisticated consumer, defendant's instruction to make a payment or arrange a payment plan on or before March 29, 2013 is confusing when compared to the 30-day dispute period, which would have run until April 10, 2013); *McCafferty v. Schwartzkoft Law Office*, No. 4:10CV1401 RWS, 2011 WL 4916382, at *3 (E.D. Mo. Oct. 17, 2011) (holding that a letter that demanded payment in full "within thirty (30) days of the date of this letter" overshadowed a validation notice later in the letter stating that the plaintiff could dispute the debt "within thirty (30) days of receipt of this letter"; finding that an unsophisticated consumer receiving the letter would be confused about

---

"whether the statute permits an overshadowing claim based on a communication sent before a validation notice").

her rights because the window of time to respond to the demand for payment expired before the window of time for the recipient to dispute the debt); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85-86 (2d Cir. 1998) (holding that a letter demanding "immediate payment" without explaining how that demand related to the plaintiff's dispute rights overshadowed a validation notice elsewhere in the letter); *Robinson v. Transworld Sys., Inc.*, 876 F. Supp. 385, 392 (N.D. N.Y. Feb. 8, 1995) (letters sent during validation period demanding that a consumer contact a creditor "AT ONCE" and telling the consumer, "THERE ARE TWO WAYS OF SETTLING A LEGITIMATE DEBT—TIMELY PAYMENT OR AS THE RESULT OF PROTRACTED AND UNPLEASANT COLLECTION EFFORT" could mislead an unsophisticated consumer into believing that he needed to take action immediately and could therefore overshadow his validation rights).

In contrast, courts have found no overshadowing where the debt collector requests payment but does not indicate that payment must be made before the expiration of the 30-day dispute window described in the validation notice. In *Founie*, the defendant sent a letter telling the plaintiff that it would be "very easy" to be "free of this debt" if she would "just enclose $724.29 in the envelope provided." *Id.* at *2. It stated that her account would then be considered "PAID IN FULL," that the credit reporting agencies would be notified, and that no further collection activity would occur. *Id.* The letter went on to inform her of her right to dispute the debt within 30 days. *Id.* The court granted summary judgment in favor of the defendant on the plaintiff's § 1692g(b) overshadowing claim. *Id.* at *4. It emphasized that letter was "does not demand any action (including payment) from [the plaintiff] within the 30-day window, nor does the letter request immediate contact or threaten her with negative consequences if she fails to take action before the close of the 30-day window"; instead, it "simply advises [the plaintiff] of

the advantages to her if she chooses to pay the debt in full." *Id.* The Court found nothing confusing or contradictory about the letter's language, particularly when viewed in the context of the letter as a whole. *Id. See also Riess v. Messerli & Kramer, P.A.*, Civ. No. 11-2307 (RHK/JJK), 2011 WL 5506290, at *4 (D. Minn. Nov. 10, 2011) (holding that a letter sent during the 30-day dispute window that stated that it was important that the plaintiff contact defendant to arrange payment, but contained no demand for immediate payment or deadline for responding, did not overshadow or contradict the validation notice; emphasizing that "[n]othing in the . . . letter suggested that [the plaintiff] had to take action before the close of the 30-day window in order to avoid negative consequences").

The facts of this case are much closer to the facts in *Founie* and *Riess* than to those in the cases cited by Plaintiff. Here, as in *Founie* and *Riess*, Defendant invited Plaintiff to make payments, but it did not demand "immediate" payment, did not specify a deadline for payment within the 30-day dispute period, and did not threaten negative consequences if payment was not made within the 30-day dispute period. Plaintiff suggests that an unsophisticated customer would have interpreted Defendant's statement that she "can just begin making monthly payments" at Defendant's website or by sending a money order to be a request for immediate payment. The Court disagrees. Nothing in Defendant's language indicated that Plaintiff was required or expected to take action within any particular time frame. To the contrary, when Plaintiff asked, "Is there a deadline when I have to have this paid by," Defendant said, "No."

Plaintiff also suggests that Defendant violated § 1692g(b) by telling her in the telephone call that she could make payments on her debt but not informing her of her dispute rights in the same telephone call. However, Plaintiff provides no authority for that position, nor does the language of the statute support it. Section 1692g(a) specifically contemplates that the debt

13

collector may communicate with a consumer regarding a debt and then *subsequently* send the validation notice, as long as it sends the validation notice within the next five days. Plaintiff's position, if accepted, would essentially eliminate the five-day period from the statute and require the debt collector to inform a consumer of her dispute rights in the initial communication. It is not the Court's role to rewrite the statute. *Cf. O'Connor v. Diversified Consultants, Inc.*, No. 4:11CV 1722 RWS, 2013 WL 2319342, at *3 (E.D. Mo. May 28, 2013) (refusing to certify a class of plaintiffs who were contacted "where a demand for an immediate payment of the debt was made without informing the debtor of his right to dispute the debt," because the FDCPA does not bar a debt collector "from calling a debtor, letting him know his debt has been assigned for collection, and requesting that the debtor pay the debt" and "does not require the collector in its initial contact with the debtor to notify him of his right to dispute the debt," but instead requires notice within five days of the initial contact).

In sum, there is nothing confusing, inconsistent, or contradictory about informing a consumer that she "can" make payments on a debt and also informing her (in the timely validation notice sent the next day) that she has 30 days to dispute the debt. Presumably, *any* consumer who is aware that she has a debt is already aware that she "can" make payments on the debt and that the debt collector would like her to do so. Because the statements in the October 1 telephone call would not have confused or misled even an unsophisticated consumer about the dispute rights outlined in the validation notice, those statements did not overshadow the disclosures of Plaintiff's rights in the validation notice. Therefore, Defendant is entitled to summary judgment on this portion of Plaintiff's 1692g(b) claim.

14

*(2) Credit Reporting of Plaintiff's Debt*

Plaintiff also argues that Defendant overshadowed her dispute rights in violation of § 1692g(b) by credit reporting Plaintiff's debt for several years, beginning in 2011. Plaintiff's position is that the initial credit reporting in 2011 was the initial communication with a consumer, that this triggered Defendant's obligation to provide notice of dispute rights under § 1692g(a), that Defendant failed to do so, and that therefore § 1692g(b) prohibited Defendant from taking any subsequent action that overshadowed Plaintiff's dispute rights.

Plaintiff's claim fails as a matter of law for two reasons. First, the credit reporting at issue occurred outside of the "30-day period" in which § 1692g(b) prohibits activities that overshadow the disclosures in the § 1692g(a) validation notice. That period begins, at the earliest, at the time of the initial communication with a consumer that triggers the requirement to send the § 1692g(a) validation notice. *Cf. Bryant v. Wells Fargo Bank*, 861 F. Supp. 2d 646, 651 n.1 & 652 (E.D. N.C. March 1, 2012). The Court has already held that the initial communication with a consumer did not occur until October 1, 2013. The materials provided to the Court suggest that Defendant's last report to a credit reporting agency occurred in August 2013. Thus, the credit reporting occurred well before the period addressed in § 1692g(b). Neither the text of the statute, nor any case law cited by Plaintiff or identified by the Court, suggests that a § 1692g(b) claim may be based on communications or collection activities that occurred *before* the initial communication with a consumer.

Second, even if any credit reporting did occur during a time period governed by § 1692g(b), the credit reporting did not overshadow the disclosures in the October 2, 2013 validation notice. Plaintiff cites numerous cases supporting her argument that credit reporting is a collection communication under the FDCPA and is intended to induce payment of a debt. *See*

Pl's. Br., Doc. 17, at 11-12. However, Plaintiff appears to overlook the fact that § 1692g(b) does not prohibit *all* communications or collection activity during the 30-day dispute period. To the contrary, § 1692g(b) expressly *permits* collection activities and communications to continue, as long as they do not overshadow the § 1692g(a) disclosures and as long as the consumer has not disputed the debt in writing. *See* § 1692g(b); *see also Founie*, 2014 WL 6607197, at *3 ("'The validation period is not a grace period; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity.'") (quoting *Ellis v. Solomon and Solomon, P.C.*, 591 F .3d 130, 135 (2d Cir. 2010)).

Here, it is undisputed that Plaintiff never disputed the debt in writing, so the only question is whether the credit reporting overshadowed the disclosure of her dispute rights in the validation notice.[4] The undisputed facts show that it did not. Plaintiff attached to her motion a copy of her credit report, and it simply states the basic facts regarding Plaintiff's debt: that there was an account with Trident Asset Management, the account was "Open, Collection," the original creditor was Ameristar Casino, the current balance was $225, the account was opened in May 2008 and last reported in August 2013, and the past due amount was $225. Defendant's contact information was also provided. (Doc. 16-3). Like Defendant's statements in the October 1, 2013, telephone call, the report contains no suggestion that Plaintiff must pay the debt within any particular time frame and no threat of negative consequences if action is not taken within a particular time frame. Nothing in the credit report was inconsistent with or contradictory to the dispute rights outlined in the validation notice. An unsophisticated consumer who read the credit report, in conjunction with the proper validation notice that was timely sent by Defendant,

---

[4] Because Plaintiff sent no written dispute notice in this case, Plaintiff's reliance on *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274 (S.D. Ala. 2010) is misplaced. *See id*. (holding that credit reporting a debt after the plaintiff had disputed it in writing violated § 1692g(b)'s requirement that the debt collector cease collection following a written dispute notice).

would not be confused or misled about her rights. Thus, the credit reporting did not overshadow the disclosure of those rights, and Defendant is entitled to summary judgment as a matter of law on this portion of Plaintiff's § 1692g(b) claim.

### IV. CONCLUSION

For all of the above reasons, Defendant is entitled to summary judgment on all of Plaintiff's claims. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Katina M. Perry's Partial Motion for Summary Judgment (Doc. 15) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Trident Asset Management, L.L.C.'s Motion for Summary Judgment (Doc. 20) is **GRANTED**. The Court will issue a separate judgment on the same day as this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: February 2, 2015.